UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


ALICA[1] LAMONTAGNE,           :
        Plaintiff,             :
                               :
        v.                     :        CA 10-118 S
                               :
MICHAEL J. ASTRUE,             :
COMMISSIONER OF                :
SOCIAL SECURITY,               :
        Defendant.             :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff
Alica LaMontagne ("Plaintiff") for judicial review of the decision
of the Commissioner of Social Security ("the Commissioner"),
denying disability insurance benefits ("DIB") and Supplemental
Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the
Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3)
("the Act"). Plaintiff has filed a motion to reverse the decision
of the Commissioner. See Plaintiff's Motion to Reverse without or,
Alternatively, with a Remand for a Rehearing the Commissioner's
Final Decision (Docket ("Dkt.") #8) ("Motion to Reverse").
Defendant Michael J. Astrue ("Defendant") has filed a motion for an
order affirming the Commissioner's decision. See Defendant's

_____

    [1] Plaintiff's first name appears in the record variously as "Alica,"
(Record ("R.") at 7, 18), "Alicia," (R. at 253, 411), and "Aliza," (R.
at 281). The Court utilizes the spelling as it appears in the
Administrative Law Judge's decision, (R. at 7), and the Complaint, see
Docket ("Dkt.") #1.

Motion for an Order Affirming the Decision of the Commissioner (Dkt. #12) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

## Facts and Travel

Plaintiff was born in 1964 and was forty-two years old as of her alleged onset date. (Record ("R.") at 16, 23) She has at least a high school education, is able to communicate in English, and has past relevant work as a social services aide, fundraiser, house cleaner, bakery counter worker, day care worker, and certified nursing assistant. (R. at 15-16, 24)

Plaintiff filed applications for DIB and SSI on August 15, 2007, (R. at 7), alleging disability since July 8, 2007, due to Post Traumatic Stress Disorder ("PTSD"), anxiety, depression, back problems, and insomnia, (R. at 129). The applications were denied initially, (R. at 51, 52), and on reconsideration by a Federal Reviewing Official, (R. at 53-59), and Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 70-71).

A hearing was held on August 27, 2009, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial vocational expert ("VE"), Kenneth R. Smith. (R. at 7, 18-50) On September 30, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 7-17) The Decision Review Board selected Plaintiff's case for review, (R. at 1, 4), but failed to complete its review within the time allowed, (R. at 1), thereby rendering the ALJ's decision the final decision of the Commissioner, (id.). Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed de novo, the Commissioner's findings of fact, if

supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

[3] The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2008. (R. at 7, 9)

application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2011). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

(2011).[5]  A claimant's complaints alone cannot provide a basis for
entitlement when they are not supported by medical evidence.  <u>See</u>
<u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st
Cir. 1986); 20 C.F.R. § 404.1529(a) (2011).

The Social Security regulations prescribe a five step inquiry
for use in determining whether a claimant is disabled.  <u>See</u> 20
C.F.R. § 404.1520(a) (2011); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S.
137, 140-42, 107 S.Ct. 2287, 2291 (1987); <u>Seavey v. Barnhart</u>, 276
F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the
Commissioner must determine sequentially: (1) whether the claimant
is presently engaged in substantial gainful work activity; (2)
whether she has a severe impairment; (3) whether her impairment
meets or equals one of the Commissioner's listed impairments; (4)
whether she is able to perform her past relevant work; and (5)
whether she remains capable of performing any work within the
economy.  <u>See</u> 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be
terminated at any step.  <u>See</u> <u>Seavey v. Barnhart</u>, 276 F.3d at 4.
"The applicant has the burden of production and proof at the first
four steps of the process.  If the applicant has met ... her burden
at the first four steps, the Commissioner then has the burden at
Step 5 of coming forward with evidence of specific jobs in the

_____

[5]  The Social Security Administration ("SSA") has promulgated
identical sets of regulations governing eligibility for DIB and SSI.  <u>See</u>
<u>McDonald v. Sec'y of Health & Human Servs.</u>, 795 F.2d 1118, 1120 n.1 (1st
Cir. 1986).  For simplicity, the Court hereafter will cite to one set of
regulations only.  <u>See</u> <u>id.</u>

national economy that the applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since July 8, 2007, her alleged onset date, (R. at 9); that Plaintiff's musculoskeletal pain disorder and borderline personality disorder constituted severe impairments, (<u>id.</u>); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (<u>id.</u>); that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she had a moderate limitation in her ability to sustain concentration and attention, a moderate limitation in her ability to deal with co-workers and supervisors, and a more significant restriction in her ability to deal with members of the public, (R. at 11); that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible to the extent that they were inconsistent with the above RFC, (R. at 11-12); that Plaintiff was unable to perform any past relevant work, (R. at 15); that, considering her age, education, work experience, and RFC, there

were jobs which existed in significant numbers in the national economy which Plaintiff was capable of performing, (R. at 16); and that Plaintiff had not been under a disability, as defined in the Act, from July 8, 2007, through the date of the ALJ's decision, (R. at 17).

## Error Claimed

Plaintiff alleges that: 1) the ALJ's credibility finding is not supported by substantial evidence; and 2) the ALJ failed to assess accurately the severity of Plaintiff's mental impairment.

## Discussion

### I.   The ALJ's credibility finding

As noted above, although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, he also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible to the extent they were inconsistent with the ALJ's RFC assessment.  (R. at 11-12)  Plaintiff makes two arguments in support of her contention that substantial evidence does not support the ALJ's credibility finding.  See Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 5-8.

First, Plaintiff maintains that the ALJ erred in finding that

she "was able to make an extended journey to Florida for several months over the summer of 2008 ...." Id. at 5 (quoting (R. at 13)) (alteration in original). Plaintiff notes that she presented for treatment within the state of Rhode Island in June, July, and August of 2008, and that, therefore, she could not have taken the extended journey contemplated by the ALJ as she would not have traveled back and forth from Florida to Rhode Island for the purpose of these appointments. Plaintiff's Mem. at 5-6. Plaintiff thus concludes that substantial evidence does not support the ALJ's credibility finding. Id. at 5-6.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...." Avery, 797 F.2d at 28.[6] In

---

[6] Specifically, the ALJ is directed to consider, in addition to the objective medical evidence, the following factors:

1.   The individual's daily activities;
2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the symptoms;
4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Avery, 797 F.2d at 29; see also 20 C.F.R. § 404.1529(c)(3) (2011) (listing factors relevant to symptoms, such as pain, to be considered); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (S.S.A.) (same).

addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (S.S.A.). The ALJ's credibility finding "must be grounded in the evidence," id. at *4, and is generally entitled to deference, especially when supported by specific findings, see Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations ...").

The Court notes that evidence in the record supports Plaintiff's assertion that she presented for treatment in Rhode Island during the months of June, July, and August of 2008.[7] On June 30, 2008, Plaintiff was treated by Carol Mowatt, PCNS, at the Thundermist Health Center of West Warwick, R.I. ("Thundermist").

---

[7] Defendant essentially admits this much in his memorandum, stating that "Plaintiff may not have taken the 'extended' journey to Florida contemplated by the ALJ[.]" Defendant's Memorandum of Law in Support of the Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 8-9.

(R. at 404)  On July 16, 2008, Plaintiff was examined by Vaughn G. Gooding, Jr., M.D., at West Bay Orthopedics Associates, Inc., in Warwick, R.I., in follow-up from a closed reduction of a distal left radius fracture in March 2008.  (R. at 624)  Later, on August 18, 2008, Plaintiff reported to Thundermist for medication management.  (R. at 539)

Notwithstanding these appointments, however, there is also evidence in the record to suggest that Plaintiff took a trip to Florida during the summer of 2008, although her stay may have been for only a limited duration.  On June 30, 2008, Nurse Mowatt wrote in her treatment notes "[Plaintiff is] leaving for Florida to stay with family - homeless, staying briefly at sister's house until leaving (bought bus ticket in advance) - may be temporary (or not)."  (R. at 404)  Nurse Mowatt also gave Plaintiff three refills of each of her medications to last her until she decided if her move to Florida was temporary or permanent.  (Id.)  Furthermore, from the fall of 2007 up until that June 30th appointment, Plaintiff had been seeing Nurse Mowatt on a monthly basis for medication follow-ups and weekly for group therapy.  (R. at 394)(letter from Nurse Mowatt dated March 10, 2008, stating Plaintiff "has been coming consistently to medication follow-up appointments on a monthly basis as well as actively participating in a weekly women's cognitive therapy/support group since last fall 2007."); (R. at 557-613)(consisting of notes from Plaintiff's attendance at group

therapy and medication follow-ups); (R. at 222-62)(same). However, after the June 30th appointment in which Nurse Mowatt noted Plaintiff's planned trip to Florida, Plaintiff did not see Nurse Mowatt until August 18, 2008, (R. at 539), and nothing in the record indicates Plaintiff attended weekly group therapy after the June appointment, (R. at 36-37)(stating Plaintiff no longer attends group therapy).

    Although the ALJ may have overstated the length of the trip, it was not unreasonable for him to infer from the evidence that Plaintiff made a bus trip from Rhode Island to Florida as she purchased a ticket in advance, was given extra medication because of the trip, and stopped what had been a continuous pattern of treatment.  It is the ALJ's responsibility to draw permissible inferences from the record.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

    While the ALJ focused on the duration of the trip, he also noted that it was from Rhode Island to Florida.  (Id.)  Plaintiff's ability to take a trip of such a distance, on a bus, is important in relation to Plaintiff's credibility, as doing so is inconsistent with her claimed impairments.  (R. at 26)("I'm scared of people. When I go out in public I have to be looking around my shoulder to make sure that no one's near me or looking at me."); (id.)("I'm just very nervous and sick to my stomach because being around people makes me very anxious."); (R. at 29)("If I can't get someone

12

to take me to the store I take a bus and do a small errand, but it's a very uncomfortable situation for me.  I kind of sit in the back of the bus and don't let anybody sit next to me[.]"); (R. at 31)(claiming Plaintiff can sit for only a half-hour at a time); (R. at 145)(noting limited ability to sit on Function Report); see also Roybal v. Astrue, 224 Fed. Appx. 843, 848 (10th Cir. 2007)(finding that plaintiff's decision to cut short a visit to North Carolina and return by herself to Utah on a bus indicated that plaintiff could undertake activities outside her house by herself and that she could take care of herself, supporting ALJ's adverse credibility finding).

Thus, even if Plaintiff changed her mind and did not make the trip to Florida as she had planned, the fact that Plaintiff purchased the ticket is at odds with her claims that being on a bus is a "very uncomfortable situation," (R. at 29), and that the longest she could sit was "[a]bout half an hour," (R. at 31).  By purchasing the ticket and telling Nurse Mowatt about the planned trip, Plaintiff evidenced a belief that she was capable of making a bus journey of more than twenty hours.  During this time she would undoubtedly be in fairly close contact with numerous strangers, both on the bus and in bus terminals along the way. Accordingly, the Court does not find that the ALJ's misstatement is fatal to the determination he made regarding Plaintiff's credibility.

In addition, the ALJ relied on multiple other findings in making his credibility ruling. (R. at 13-14) For instance, although Plaintiff eventually complied with treatment by attending weekly group therapy sessions and medication follow-ups, (R. at 222-62, 394, 557-613), the ALJ noted that Plaintiff had never been treated at any time by a psychiatrist and that her early treatment with Nurse Mowatt was characterized by limited compliance with medication and limited participation in other treatment such as counseling, (R. at 13); (R. at 38)(agreeing with statement by counsel that Plaintiff "self discontinued a lot of medications"); (R. at 583)("Took 2x acceptable dose."); (R. at 571)("Client stopped all her meds except clonazepam. Reports she did not feel they were working."); (R. at 568)("Stopped therapy w/Kate feeling she did not connect - asked me to help her find another therapist."); (R. at 570)("Discussion of [patient]'s inappropriate behavior with staff. Must be polite or I will not continue to serve ... reviewed need to keep appts.");(R. at 429)("Overall the patient has a mood disorder but does not want treatment[.]"). This evidence additionally supports the ALJ's adverse credibility finding. See SSR 96-7p 1996 WL 374186, at *7 ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this

14

failure.").

The ALJ further noted that Plaintiff lived in an apartment with her boyfriend where they shared the cooking, cleaning, and shopping, was able to pay bills, enjoyed reading and watching television, used a computer, used public transportation, ran errands, attended appointments, was able to attend group therapy, took walks, and did light exercise. (R. at 10); see also SSR 96-7p, 1996 WL 374186 at *2 (listing factors the ALJ must consider in making a credibility finding, including daily activities). In addition, Plaintiff was questioned at the hearing regarding the required factors. See SSR 96-7p, 1996 WL 374186 at *3; see also Frustaglia, 829 F.2d at 195. Plaintiff testified as to her daily activities, (R. at 29-31); the location, duration, frequency and intensity of her symptoms, (R. at 26, 32, 34-36); factors that precipitated and aggravated the symptoms, (R. at 39); the type, dosage, and effectiveness of her medications, (R. at 31-32, 38); treatment other than medication she received, (R. at 27, 36); and measures other than treatment she used to relieve her symptoms, (R. at 33).

As her second argument regarding the ALJ's credibility finding, Plaintiff asserts that the ALJ overstated her activities of daily living. Plaintiff's Mem. at 6. Specifically, Plaintiff states that the ALJ erred in finding that she "enjoys" reading and watching television, failed to evaluate her difficulties in taking

the bus, and failed to address her difficulties in attending group therapy and that, therefore, the ALJ's credibility finding is not supported by substantial evidence. Id. at 6-8.

Plaintiff states that she never testified to enjoying reading and watching television, but instead testified that she had significant difficulty reading. Id. at 6-7. While Plaintiff is correct that she did not testify to enjoying these activities,[8] she did report to Louis Turchetta, Ed.D., that she "enjoys reading, watching television and listening to music," (R. at 307), during a consultative examination on November, 5, 2007, (id.). Furthermore, Plaintiff reported to the Commissioner on her Function Report that reading and TV were her daily activities, (R. at 140), her hobbies, (R. at 144), and that she did both "ok," (id.). As such, this conflict in the evidence was one for the ALJ to resolve. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner] -- rather than the courts -- to resolve.). Reviewing the record as a whole, the Court finds that a reasonable mind could have reached the

_____

[8] In describing her daily activities, Plaintiff testified that in the late afternoon she would "usually lay down for awhile until my boyfriend comes home from work and I make a very late supper. I have him do the other chores. Then I usually just either read or watch t.v. before I go to bed." (R. at 29-30)

conclusion that Plaintiff enjoyed reading and watching TV. See
Irlanda Ortiz, 955 F.2d at 769 (1st Cir. 1999)("We must uphold the
[Commissioner's] findings ... if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.")

Regarding public transportation, Plaintiff claims the ALJ
failed to mention or evaluate her difficulties in taking the bus.
Plaintiff's Mem. at 7. The ALJ, however, was merely reciting
Plaintiff's activities of daily living gleaned from the evidence.
(R. at 10)("The claimant is able to ... use public transportation
as necessary."). It is undisputed that Plaintiff is able to use
public transportation. Plaintiff reported to the Commissioner that
she used the bus to travel to appointments, (R. at 140), and to go
shopping, (R. at 143), reported to Dr. Turchetta that she was able
to utilize public transportation, (R. at 307), testified that she
took the bus to do small errands, (R. at 29), and at a February 8,
2007, appointment at Thundermist had to "leave abruptly to catch
the bus," (R. at 253). Even allowing that Plaintiff experienced
some difficulties in riding the bus, it is uncontested that
Plaintiff was able to do so. Therefore, the ALJ was not
overstating this activity.

Finally, Plaintiff makes a similar claim regarding her
attendance at group therapy sessions, arguing that the ALJ failed
to mention or evaluate evidence and testimony regarding her

difficulty in attending these sessions. Plaintiff's Mem. at 8. Again, the ALJ was merely narrating Plaintiff's activities in the record. (R. at 10)("She has been able to attend group therapy sessions.") Plaintiff does not challenge her ability to attend group therapy, and in fact admitted that she was capable of attending these sessions. (R. at 144)(stating in Plaintiff's Function Report that she attends psychological counseling on a regular basis and takes part in a weekly woman's behavioral support group); (R. at 557-613)(consisting of notes from Plaintiff's attendance at group therapy); (R. at 222-62)(same). As such, while attending group therapy may have been difficult for Plaintiff, the fact remains that Plaintiff was able to attend the sessions, as the ALJ correctly noted.

Thus, the ALJ did not overstate Plaintiff's activities of daily living, but rather simply established those activities by examining Plaintiff's testimony and the evidence in the record. As such, the ALJ had ample other evidence to support his credibility finding in addition to the challenged bus trip to Florida.

In sum, the Court finds that, although Plaintiff may not have taken the "extended" trip to Florida referenced by the ALJ in his decision, the evidence supports the fact that Plaintiff believed that she was capable of taking such a trip. This was at odds with her testimony. Thus, it was the ability to take such a trip, and not the duration of Plaintiff's stay in Florida, that supports the

ALJ's credibility ruling.  In addition, substantial other evidence in the record supports the ALJ's negative credibility finding.  The Court finds that in articulating this evidence the ALJ did not overstate Plaintiff's activities of daily living, but, rather, accurately recited those activities based on evidence in the record.  Thus, I recommend that Plaintiff's first claim of error be rejected.

## II.  The ALJ's assessment of Plaintiff's mental impairment

Plaintiff next argues that the ALJ failed to assess accurately the severity of her mental impairment, Plaintiff's Mem. at 8, and that, thus, substantial evidence does not support the ALJ's findings, id.  Again Plaintiff makes two points in support of her argument.  See id. at 8-10.

First, Plaintiff contends that "the ALJ ma[de] much of the fact that [she] was assessed a Global Assessment of Function[ing][9] (GAF) score of 55,[10] once, at an *initial* assessment in September

---

[9] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32); see also Lopez v. Barnhart, 78 Fed. Appx. 675, 677 (10th Cir. 2003)("The GAF scale is used by clinicians to report an individual's overall level of functioning.").  The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM-IV-TR at 34.

[10] A GAF score between 51-60 is indicative of "**[m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR at 34.

2008," id. at 8-9, but that "GAF scores do not control," id. at 8.
Plaintiff goes on to state that this GAF score, assessed by Susan
Gagnon, PCNS, cannot constitute substantial evidence for the ALJ's
decision. Id. at 9

Plaintiff apparently misunderstands the ALJ's use of the GAF
score from Nurse Gagnon. Of the two references to the contested
GAF score, the first was merely the ALJ reciting the evidence
before him. (R. at 13)("[Plaintiff] was alert and oriented, well
groomed, with good attention but a sad and anxious affect, and she
was diagnosed with post-traumatic stress disorder, a mood disorder-
NOS and borderline personality traits with a GAF of 55."). The ALJ
referred to the score for a second time not as evidence supporting
his finding regarding Plaintiff's mental RFC, but merely to note an
inconsistency between the score and Nurse Gagnon's assessment of
Plaintiff's mental impairment. The ALJ stated:

> [A] number of the symptoms [Nurse Gagnon] lists in her
> assessment *do not* appear in her contemporaneously
> recorded treatment records, i.e.[,] flashbacks, or
> reliving experiences. In addition, although the
> claimant's symptoms are rated as "severe", Nurse Gagnon
> assessed the claimant's GAF as a 55, reflective as being
> moderately limited in function.

(R. at 15) The Court thinks it clear that the ALJ did not use the
GAF score to guide his analysis of Plaintiff's mental impairment,
but simply pointed out an inconsistency in Nurse Gagnon's opinion
for the purpose of explaining why he was not giving the opinion

"probative value." (Id.)[11]  The ALJ noted that the GAF score Nurse Gagnon assigned Plaintiff was inconsistent with her finding that Plaintiff was severely impaired.  (Id.)  He did not use the score as a basis for his mental RFC finding.  As such, Plaintiff's first argument is rejected.

As her second argument, Plaintiff posits that MaryAnn Paxson, Ph.D., a non-examining psychologist who reviewed the medical records at the Commissioner's behest, found Plaintiff more limited than did the ALJ in his RFC determination.  See Plaintiff's Mem. at 10.  Specifically, Plaintiff states that "Dr. Paxson opined that [Plaintiff] would be 'distracted by change, others, and a stressful work environment.'"  Id. (quoting (R. at 325)).  Plaintiff argues that because the ALJ failed to include limitations regarding Plaintiff's ability to adapt to change or work in a stressful environment, his RFC assessment is not supported by substantial evidence, and, further, that he failed to address why those limitations were not included.  See id.

Plaintiff's argument on this point consists of a single paragraph, see Plaintiff's Mem. at 10, and the Court does not find it persuasive.  The ALJ found that Plaintiff had the residual functional capacity to perform light work, with a moderate limitation in her ability to sustain concentration and attention,

_____

[11] Plaintiff does not challenge the ALJ's decision to decline to afford Nurse Gagnon's opinion little weight.  See generally Plaintiff's Mem.

a moderate limitation in her ability to deal with co-workers and
supervisors, and a more significant restriction in her ability to
deal with members of the public.[12]   (R. at 11)   The relevant
paragraph from Dr. Paxson, including the line in question, states:

> [Plaintiff] is noted by Dr. Turchetta to be disorganized
> and requiring redirection.  She is able to be redirected
> and answers questions adequately.  She is able to
> maintain adequate attention, concentration, pace and
> persistence with familiar tasks.  She is distracted by
> changes, others and stressful work environment.  She is
> able to complete 2 hour periods throughout the 8 hour day
> with familiar tasks.

(R. at 325)   Dr. Paxson further noted that Plaintiff would "not be
able to work directly with the general public. ... She is capable
of working in [an] autonomous setting," (id.), that she "can adapt
to uncomplicated change," (id.), and that she "is able to
understand, remember and carry out 1-2-3 step familiar, repetitive
tasks," (id.).   In addition, Dr. Paxson filled out a mental RFC

--------

[12] Although the ALJ did not in his RFC finding explicitly limit
Plaintiff to unskilled work, he provided the following definition to the
vocational expert ("VE") at the hearing:

> The claimant is limited to unskilled work tasks.  She is not
> able to interact with the public.  The claimant can work in
> the presence of co-workers and engage in appropriate
> occasional social interaction, but cannot work in the context
> of a work team where work-related interaction with co-workers
> is constant and physically close; and can deal appropriately
> with supervisors on an occasional basis (as where subject to
> normal monitoring and review of work in industrial settings),
> but not in circumstances in which, because of product
> considerations or for other reasons, monitoring and
> intervention by supervisors is physically close and/or
> frequent or continuous.

(R. at 11 n.1)

assessment, finding Plaintiff to be no more than moderately limited in any function related to mental capacity.  (R. at 323-24)

A fair reading of Dr. Paxson's opinion indicates that she took Plaintiff's distraction by change into account when stating that Plaintiff could adapt to uncomplicated change and took Plaintiff's distraction by a stressful work environment into account by limiting Plaintiff to two-hour periods of work in an eight-hour work day with familiar tasks.[13]  This limitation is consistent with the mental ability needed for unskilled work.  See POMS DI 2502.010, 2001 WL 1933437; see also Baker v. Soc. Sec. Admin. Comm'r, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *6 (D. Me. Mar. 31, 2011)("a DDS consultant's assessment of a capacity for concentration in two-hour blocks merely indicates that a claimant crosses the threshold for having a residual functional capacity for unskilled work"), adopted by Baker v. Astrue, 2011 WL 1481310 (D. Me. Apr. 19, 2011).  Since Dr. Paxson found Plaintiff limited to two-hour blocks of work and to performing familiar tasks, the ALJ made a reasonable inference that Dr. Paxson limited Plaintiff to unskilled work.   See Rodriguez, 647 F.2d at 222; 20 C.F.R.

---

[13] Although Plaintiff does not mention Plaintiff's distraction by "others," Plaintiff's Mem. at 10, Dr. Paxson clearly accounted for this limitation by stating that Plaintiff would "not be able to work directly with the general public, (R. at 325), and was "capable of working in [an] autonomous setting," (id.).  The ALJ also accounted for this limitation by instructing the VE that the hypothetical claimant presented could not "work in the context of a work team where work-related interaction with co-workers is constant and physically close," (R. at 11 n.1); see also n.12.

§404.1568(a) (2011)("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

As noted, the ALJ's mental RFC assessment did not contain an explicit limitation to unskilled work. (R. at 11)  However, the hypothetical that the ALJ posed to the VE at the hearing, which served as the basis for the ALJ's Step 5 finding, did limit Plaintiff to unskilled work. (R. at 11 n.1, 43)  The VE testified that the hypothetical claimant described by the ALJ—"limited by non-exertional impairments to tasks which are essentially unskilled and limited in her ability to deal with public, coworkers or supervisors,"[14] (R. at 43),—could work as a light house cleaner, assembler, or packager, (R. at 44-45).  In making his Step 5 finding, the ALJ relied on this testimony to determine that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. at 16)("To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."); (R. at 17)("Based on the testimony of the vocational expert, the [ALJ] concludes that ... the claimant is capable of making a successful adjustment to other work that exists in significant

---

[14] See n.12.

24

numbers in the national economy.").

An ALJ is required to consider the findings and opinions of psychological consultants in making his decision. See 20 C.F.R. § 404.1527(f)(2)(i) (2011) ("[A]dministrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]"). However, an ALJ need not address every piece of evidence in the record. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)("[A]n ALJ is not required to discuss every piece of evidence submitted."); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)(recognizing that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence"); Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)("[T]he ALJ need not directly address every piece of evidence in the administrative record.")(citing Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1)(1st Cir. Sept. 11, 1990)(table decision; text in Westlaw)("An ALJ is not required to expressly refer to each document in the record, piece-by-piece)); cf. Black, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.")(internal citation omitted).

Here, while the ALJ did not explicitly refer to Dr. Paxson's

opinion limiting Plaintiff to working two-hour periods doing familiar tasks—a limitation consistent with unskilled work—he specifically limited the hypothetical claimant in his question to the VE to unskilled work, (R. at 43), and based his Step 5 finding on the VE's answer, (R. at 16-17). Thus, the Court finds that the ALJ considered Dr. Paxson's opinion, including Plaintiff's limitation to two-hour work periods, in making his Step 5 finding. Remand for the purpose of requiring the ALJ to reference Dr. Paxson's opinion in his decision would be an unnecessary exercise, as the ALJ's failure to mention the limitation to unskilled work in his mental RFC assessment had no impact on his Step 5 finding. See Caldwell v. Barnhart, 261 Fed. Appx. 188, 190 (11ᵗʰ Cir. Jan. 7, 2008)(affirming district court's finding that remand was unnecessary when ALJ did not explain weight given to a particular opinion because the opinion would not affect Plaintiff's ability to perform a job identified by the VE and relied upon by the ALJ at his Step 5 finding); Laffely v. Barnhart, No. 04-273-P-C, 2005 WL 1923515, at *7 (D. Me. Aug. 9, 2005)(choosing not to remand when the ALJ did not specifically reference an uncontroverted limitation of the plaintiff in his RFC finding because the ALJ's Step 5 finding relied upon testimony by the VE which incorporated the restriction); see also Dantran v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1ˢᵗ Cir. 1999)(noting that remand is unnecessary if it will amount to "no more than an empty exercise"); Fisher v. Bowen, 869

F.2d at 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Seymour v. Barnhart, No 02-197-B-W, 2003 WL 22466174, at *3 (D. Me. Oct. 31, 2003)("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably ha[s] no practical effect on the outcome of the case.")(quoting Bryant ex rel. Bryant v. Apfel, 141 F.3d 1249, 1252 (8th Cir. 1998)).

The Court finds that the ALJ did not rely on a GAF score in assessing Plaintiff's mental impairment but, instead, used the score to highlight an inconsistency in the medical opinion of Nurse Gagnon to explain his decision not to give the opinion probative weight. The Court additionally finds that the ALJ accounted for the limitations noted by Dr. Paxson in his mental RFC determination. Although in his RFC finding the ALJ did not specifically limit Plaintiff to Dr. Paxson's restriction of two-hour work periods with familiar tasks, the hypothetical he posed to the VE at the hearing, upon which he based his Step 5 finding, limited the hypothetical claimant to unskilled work tasks—work consistent with Dr. Paxson's restriction. Therefore, I recommend that Plaintiff's second claim of error be rejected.

**Summary**

The Court finds that the ALJ's credibility finding is supported by substantial evidence. The Court further finds that the ALJ accurately assessed the severity of Plaintiff's mental impairment.

**Conclusion**

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 19, 2011